# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BANK OF COMMERCE,

    *Plaintiff*,

vs.

LANCE L. DOMINIQUE,

    *Defendant.*

Case No. 07-1332-EFM

## MEMORANDUM AND ORDER

Plaintiff Bank of Commerce bought five Federal lease obligations with the expectation of receiving a principal and interest payment each month from the lessee through an underwriter. Defendant Lance Dominique informed Plaintiff of these leases, acting as a broker, and sent Plaintiff the Federal lease offering sheets explaining the Federal lease obligation. After Plaintiff informed Defendant of the Federal lease it would like to purchase, the underwriter sent a funding letter and numerous documents pertinent to the particular Federal lease to Plaintiff. Plaintiff quit receiving payments on the leases from the underwriter and now brings numerous claims against Defendant Dominique. Before the Court is Plaintiff's Motion for Partial Summary Judgment on its Kansas Securities Law claim (Doc. 70). For the following reasons, the Court denies the motion.

**I. Factual Background[1]**

Plaintiff Bank of Commerce is a federally insured depository institution located in Wellington, Kansas. Defendant Lance Dominique, d/b/a/ Dominique & Associates, is an individual engaged in the business as a broker of equipment lease obligations throughout the United States. Dominique has been a broker of lease obligations since 1987, and Bank of Commerce has been a client of Dominique's since 1999.

Dominique advertises and facilitates these brokerage activities through the use of telephone, mail, facsimile, and the internet. He advertises that he "specializes in placing tax-exempt and taxable yielding Municipal, Federal & Commercial Lease Obligations with institutional and individual investors." Dominique also advertises that the Federal lease obligations he places with client-investors have short 2 to 5 year maturities, a "predictable return of principal and interest (monthly payments)," are "sound investment[s]," and are "booked in the loan or investment portfolio for bank investors." His advertising claims that the advantages in using Dominique's program is that "diversification is easy," Dominique has an "excellent investment safety record," he has "access to a diverse number of lease offerings," he is willing to act as an "advisor" to his client's lease portfolio, and he "assists investors by following up on administrative issues."

In soliciting clients to this program, Dominique sends a Federal lease "offering sheet" to each potential investor. This offering sheet sets forth the rate, lease term, payment amount, investment amount, equipment type, expected settlement date, and geographic location. The "offering sheet" does not set forth the identity of the underwriter.

---

[1]The Court must construe the facts in the light most favorable to the non-moving party. Here, the non-moving party is Defendant Dominique who is proceeding *pro se* in this action.

If the client-investor accepts the terms of the offering, Dominique notifies the underwriter. The underwriter then sends the funding letter to the client-investor. Each funding letter lists the documents mailed to each investor and identifies, among other things, the name of the investor, equipment locations, lease agreement, and contract number. The funding letter indicates at the bottom that Dominique is carbon copied on this correspondence.[2] If the transaction is successful, Dominique receives a commission on each lease obligation. The commission is a percent of the gross proceeds and is paid to Dominique by the underwriter out of the client's investment.

The investor does not control the leased equipment's management or use and cannot determine the placement of the leased equipment. In addition, the investor is not involved in the training, operation, or maintenance of the leased equipment. In the event the lessee terminates the lease, obtains other equipment, or defaults, the manufacturer of the leased equipment agrees to pay the investor any deficiency that may occur. Lease payments are processed by the underwriter who remits the interest and principal portion of the payment to the investor, with the excess to the manufactures for consumables.

Bank of Commerce states that Dominique placed five Federal equipment leases with it that were previously placed with other banks. In addition, Bank of Commerce alleges that Dominique was informed that four of the five leases were behind in payments before placing these leases with Bank of Commerce. Plaintiff seeks partial summary judgment on its Kansas Securities Act claim asserting that there are no genuine issues of material fact that would preclude the entry of partial summary judgment in its favor.

---

[2] Dominique asserts that he does not have access to any of the lease documents or copies, so presumably, Dominique is only copied on the funding letter and does not receive any of the supporting documentation that the underwriter sends the client-investor.

**II. Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[3] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4] A fact is "material" when "it is essential to the proper disposition of the claim."[5] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

Because Defendant is pro se, the Court must be mindful of additional considerations. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[9] However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant."[10] "[T]he court will not construct arguments or

---

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Id.*

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[8] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[9] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[10] *Id.*

-4-

theories for the plaintiff in the absence of any discussion of those issues."[11]

## III. Analysis

Plaintiff alleges that Defendant Dominique offered, sold, and placed with the Bank of Commerce investment securities as defined by the Kansas Securities Act[12], and the placement of these securities involved material omissions and untrue statements of material fact. The Kansas Security Act imposes civil liability for three types of actions arising from the offer or sale of security:

> (1) an action alleging a violation of K.S.A. 2002 Supp. 17-1254, which requires that sellers of securities be registered with the State; (2) an action alleging a violation of K.S.A. 2002 Supp. 17-1255, which prohibits selling unregistered securities; and (3) an action alleging a material and misleading misrepresentation or omission by one who has offered or sold a security ( *i.e.,* a "fraud-based" action).[13]

Plaintiff is proceeding under the last alternative, which requires Plaintiff to "demonstrate that any person, in connection with the sale or offer to sell a security: (1) made an untrue statement or omission of material fact; and (2) the buyer was unaware of the untruth or omission."[14]

The first issue is whether Defendant sold Plaintiff a security. Whether an instrument is a security is a question of law in a civil case.[15] Under K.S.A. § 17-1252(j), an investment contract is

---

[11]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[12]On July 1, 2005, the Kansas Securities Act was repealed and replaced with the Kansas Uniform Securities Act. K.S.A. 2006 Supp. § 17-12a101 *et. seq*. *See* 2004 Kan. Sess. Laws Ch. 154. The predecessor act, however, governs actions or proceedings "that are pending on the effective date of this act or may be instituted on the basis of conduct occurring before the effective date of this act . . . ." K.S.A. § 17-12a703(a). Plaintiff alleges that the conduct occurred before July 1, 2005; therefore, the Court will apply the predecessor act, the Kansas Securities Act.

[13]*Dunn v. A.G. Edwards & Sons, Inc*., 2007 WL 2767997, at *3 (Kan. Ct. App. Sept. 21, 2007) (Unpublished Opinion) (citing K.S.A. 2002 Supp. 17-1268(a)).

[14]*Id.*

[15]*Ahrens v. American-Canadian Beaver Co*., 428 F.2d 926, 928 (10th Cir. 1970); *see also Woods v. Homes & Structures of Pittsburg, Kansas, Inc*., 489 F. Supp. 1270, 1293-94 (D. Kan. 1980)).

included as a "security." Plaintiff asserts that the transaction in question constitutes an "investment contract."

Kansas uses a four part test in defining an investment contract: (1) an investment of money; (2) in a common enterprise; (3) with an expectation of future profits; and (4) to be derived from the efforts of others.[16] Plaintiff has satisfied the first element as it is undisputed that Plaintiff invested money on five separate occasions.

With regard to the second element, "a common enterprise exists when the 'fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties.'"[17] "This definition has been termed 'vertical commonality' where the court looks to the relationship between the promoter and investor to determine whether their interests are in common."[18] In Kansas, vertical commonality will meet the second element of a common enterprise.[19]

Plaintiff argues that Defendant Dominique's "investment program" involved a common enterprise because Defendant offered his client-investors the opportunity of diversification; an excellent safety record; access to a diverse number of lease offerings; investment advice; the ability to follow-up on administrative issues that may arise; and the expertise of the defendant in placing these types of investments." However, the fact that Defendant initiated the contact does not indicate that Plaintiff and Defendant engaged in a common venture where Plaintiff's investment was

---

[16]*Activator Supply Co. v. Wurth*, 239 Kan. 610, 616-17, 722 P.2d 1081, 1087 (1986); *see also State v. Glassburn-Hoesli*, 2004 WL 48175, at *3 (Kan. Ct. App. Jan. 9, 2004) (Unpublished Opinion).

[17]*Glassburn-Hoesli*, 2004 WL 48175, at *4.

[18]*Id.*

[19]*537721 Ontario, Inc. v. Mays*, 14 Kan. App. 2d 1, 4, 780 P.2d 1126, 1129 (Kan. Ct. App. 1989).

contingent on Defendant.

None of the above facts indicate that Plaintiff's fortunes are interwoven with and dependent on Defendant Dominique's efforts and success. Defendant was under no obligation to do anything more for Plaintiff after he directed Plaintiff to the lease offering, and Defendant's only further involvement was that he was carbon copied on the correspondence sent from the underwriter, Banc One, to Plaintiff. Defendant Dominique was not provided with any of the documents, and Plaintiff and Banc One consummated the federal lease transaction. Plaintiff's fortunes may be tied to the parties to the Federal lease agreement, but from the facts given, it does not appear that Defendant Dominique has any involvement with this aspect.[20]

Plaintiff relies upon *S.E.C. v. Brigadoon Scotch Distributors, Ltd.*[21] for the theory that promises of continuing services extending beyond the purchase are all factors leading to the existence of vertical commonality. In that case, however, the promoters were "emphatically entrusted with the work and expertise of producing a pay-off," and the representations of the promoter were "offered to maximize the capital of [the] investors.[22] Here, Defendant's efforts do not appear to be that significant. In addition, the success of Plaintiff's investment was unrelated to Defendant's efforts, continuing or otherwise.

---

[20] Although Plaintiff cites to several cases that allegedly stand for vertical commonality in lease arrangements, those cases are all distinguishable. Primarily, each case that Plaintiff relies upon involve an analysis as to whether there was vertical commonality between plaintiffs and the individuals in the lease agreement. It appears, therefore, that the appropriate inquiry would be whether Plaintiff engaged in a common enterprise or vertical commonality with either the lessor and lessee to the Federal Lease. The Court has not been given facts or argument as to vertical commonality with respect to these individuals. Accordingly, it declines to perform an analysis as to this aspect.

[21] 388 F. Supp. 1288 (S.D.N.Y. 1975).

[22] *Id.* at 1292.

In sum, although it appears that Defendant Dominique initiated the contact of the Federal lease offering, under the facts of this case, there was no vertical commonality between Plaintiff and Defendant Dominique. Plaintiff fails to establish that a common enterprise existed between Plaintiff and Defendant, and therefore fails to establish an investment contract under the Kansas Securities Act. Accordingly, Plaintiff is not entitled to summary judgment on this claim.

**IT IS ACCORDINGLY ORDERED** this 23rd day of November, 2009 that Plaintiff's Motion for Partial Summary Judgment (Doc. 70) is hereby denied.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE